Gans v Leech Tishman Fuscaldo & Lampl, LLC (2026 NY Slip Op 01305)

Gans v Leech Tishman Fuscaldo & Lampl, LLC

2026 NY Slip Op 01305

Decided on March 10, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 10, 2026

Before: Webber, J.P., Kennedy, Mendez, Rodriguez, Michael, JJ. 

Index No. 152695/24|Appeal No. 5729|Case No. 2025-00110|

[*1]Robert Gans, Plaintiff-Appellant,
vLeech Tishman Fuscaldo & Lampl, LLC, et al., Defendants-Respondents.

Aidala Bertuna & Kamins, PC, New York (David L. Lewis of counsel), for appellant.
Lewis Brisbois Bisgaard & Smith LLP, New York (Jamie R. Wozman of counsel), for Leech Tishman Fuscaldo & Lampl, LLC and Leech Tishman Robinson Brog, PLLC, respondents.
L'Abbate, Balkan, Colavita & Contini, L.L.P., Melville (Marian C. Rice of counsel), for Robinson Brog Leinwand Greene Genovese & Gluck P.C., Neil S. Goldstein and Philip H. Thomas, respondents.

Order, Supreme Court, New York County (Anar Rathod Patel, J.), entered November 25, 2024, which granted defendants' motions to dismiss the complaint pursuant to CPLR 3211(a)(1) and (7) and denied plaintiff's cross-motions to amend the complaint, unanimously affirmed, without costs.
Plaintiff is an experienced real estate investor who held a real estate portfolio of approximately 20 commercial properties (the Gans Entities), including Westside Realty of New York, Inc. (Westside). Westside owned property located at West 28th Street in Manhattan (the 28th St property). In June of 2018, plaintiff began having cash flow issues due to a failed investment. In an effortto generate more cash, he entered into three separate loans: (i) a preferred equity agreement between plaintiff's entity (the Common Member) and nonparty Eli Tabak's entity (the Preferred Member), whereby the Preferred Member invested $5 million in a joint venture that owned 100% of the stock in Westside, secured by UCC liens; (ii) cross-collateralized mortgages on the Gans Entities with nonparty Mack Real Estate Credit (Mack) for $130 million in senior debt; and (iii) an $18 million loan agreement with nonparty Bluestone Group LLC (Bluestone) for mezzanine financing.
In 2020, during the pandemic, plaintiff defaulted on his obligations with the Preferred Member, Mack, and Bluestone. Plaintiff subsequently reached out to his lawyers of more than 25 years, defendants Robinson Brog Leinwand Greene Genovese & Gluck, P.C., Neil S. Goldstein, and Philip H. Thomas (collectively, Robinson Brog), to assist with modifying the joint venture agreement and restructuring his debt with Mack and Bluestone. However, on June 17, 2021, the Preferred Member gave notice that it would sell Common Member's interests in the joint venture at a public sale to be held on August 11, 2021. According to plaintiff, despite obtaining an offer to purchase the 28th St property for $27 million, the Preferred Member elected to move forward with the auction. As a result, plaintiff's common membership interest in the joint venture was sold for only $100,000.
In March 2024, plaintiff sued defendants for malpractice, alleging inter alia,that Robinson Brog committed malpractice by failing to take necessary actions and provide certain advice to plaintiff to prevent the foreclosure of the 28th St property. Further, plaintiff alleges that because he was unable to use the proceeds of the proposed sale of the 28th St property, the ongoing negotiations with Mack and Bluestone concerning the restructuring of debt failed, causing plaintiff to file for bankruptcy. Finally, plaintiffalleges that Robinson Brog's negligence caused him to lose ownership of his property portfolio in which he held equity of over $80 million.
The court correctly granted Robinson Brog's motion to dismiss the legal malpractice action against them. "[T]o state a cause of action for legal malpractice, the complaint must set forth three elements: the negligence of the attorney; that the negligence was the proximate cause of the loss sustained; and proof of actual damages" (Bishop v Maurer, 33 AD3d 497, 498 [1st Dept 2006], affd 9 NY3d 910 [2007]; see also e.g. AmBase Corp. v Davis Polk & Wardwell, 8 NY3d 428, 434 [2007]). Even assuming plaintiff satisfied the first element of negligence, he failed to demonstrate the second element of proximate cause (see Leder v Spiegel, 31 AD3d 266, 268 [1st Dept 2006], affd 9 NY3d 836 [2007], cert denied 552 US 1257 [2008]). Plaintiff failed to show that "but for" Robinson Brog's negligence, he would not have lost his interest in the 28th St property, which caused him even greater losses (Bishop, 33 AD3d at 498).
Plaintiff's argument that the foreclosure of his interest in the 28th St property could have been prevented had Robinson Brog promptly contacted Preferred Member's counsel, Isaac Neuberger, after notice of the auction or Neuberger's June 30, 2021 email, is unavailing and purely speculative (see Brooks v Lewin, 21 AD3d 731, 734-735 [1st Dept 2005], lv denied 6 NY3d 713 [2006] ["[S]peculation on future events is insufficient to establish that the defendant lawyer's malpractice, if any, was a proximate cause of [the plaintiff's] loss"]). Robinson Brog asserts that they did reach out to Neuberger before the auction to explain that it was adverse to the Preferred Member's business interests because it would enable senior lenders Mack and Bluestone to foreclose on the property. Moreover, even if Robinson Brog contacted Neuberger, plaintiff's admission that the Preferred Member "had not been acting in good faith throughout the process" and had a "scheme" to steal the 28th St property contradicts plaintiff's allegations of malpractice (see generally Lisi v Lowenstein Sandler LLP, 170 AD3d 461, 462 [1st Dept 2019] [dismissing malpractice claim where complaint's allegations contradicted the plaintiff's theory]). Further, it appears that the offer to purchase the 28th St property for $27 million would have been insufficient to make the Preferred Member whole, and thus it would have still been within its rights to sell. In short, plaintiff failed to demonstrate that but for Robinson Brog's inaction or delayed action as discussed above, the foreclosure would not have occurred.
Plaintiff's argument that Robinson Brog should have tried to enjoin the auction is also without merit. Because the Common Member owned shares of Westside, which owned a commercial property, it could not demonstrate irreparable injury (see Broadway 500 W. Monroe Mezz II LLC v Transwestern Mezzanine Realty Partners II, LLC, 80 AD3d 483, 484 [1st Dept 2011]; see also RTW Retailwinds, Inc. v Colucci & Umans, 213 AD3d 509, 510 [1st Dept 2023] ["Reasonable strategic decisions made by an attorney cannot form the basis of a cause of action for legal malpractice"]). Moreover, plaintiff's contention that the Preferred Member needed the senior lender's consent to remove the Common Member as manager lacks merit. While the senior loan agreement prohibited Westside from permitting such removal, it did not require the Preferred Member to obtain Mack's consent before exercising its rights under the joint venture agreement.
Additionally, assuming Robinson Brog advised plaintiff again to pursue bankruptcy before the auction, it is speculative to assume that the bankruptcy would ultimately have allowed plaintiff to keep the equity in his properties (see Heritage Partners, LLC v Stroock & Stroock & Lavan LLP, 133 AD3d 428, 428-429 [1st Dept 2015], lv denied 27 NY3d 904 [2016]).
Because we are affirming the dismissal of the malpractice claim against Robinson Brog, we also affirm the dismissal of that claim against the remaining defendants, who are alleged to be liable for Robinson Brog's negligence under the theory of de facto merger.
Separately, the proposed amended complaint did not cure the defects of the original. Therefore, the court providently exercised its discretion by denying leave to amend (see Meimeteas v Carter Ledyard & Milburn LLP, 105 AD3d 643, 643 [1st Dept 2013]; Travelers Ins. Co. v Ferco, Inc., 122 AD2d 718, 719-720 [1st Dept 1986]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 10, 2026